UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

RENAMBA, LLC,

                    Plaintiff,                     **DECISION AND ORDER**

   -against-                                          19-cv-6233 (AEK)

RED MORTGAGE CAPITAL, LLC,

                      Defendant.
------------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**[1]

      Plaintiff Renamba, LLC ("Renamba") brings this action against Defendant Red Mortgage Capital, LLC ("RED") for breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. ECF No. 1. The parties have cross-moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF Nos. 41, 47. For the reasons that follow, Renamba's motion is DENIED, and RED's cross-motion is GRANTED IN PART AND DENIED IN PART.

**I.  BACKGROUND**[2]

The following facts are undisputed unless otherwise noted.

On August 8, 2013, Renamba, as mortgagor, and RED, as mortgagee, entered into a Mortgage Loan for the principal amount of $29,559,600.00 ("Loan"). Def.'s 56.1 Statement ¶ 1.

---

[1] The parties consented to the jurisdiction of Magistrate Judge Lisa Margaret Smith pursuant to 28 U.S.C. § 636(c) on December 4, 2019. ECF No. 26. The case was reassigned to the undersigned on October 15, 2020.

[2] The facts set forth herein are taken from the Plaintiff's Rule 56.1 Statement ("Pl.'s 56.1 Statement") (ECF No. 46), Defendant's Response to Plaintiff's Rule 56.1 Statement and Rule 56.1 Statement ("Def.'s 56.1 Statement") (ECF No. 50), and the exhibits submitted in connection with the cross-motions.

The Loan was for Renamba to purchase the land located at 25 Saxon Woods Road, Scarsdale, New York 10605.  Id. ¶ 2.  On July 29, 2014, Renamba and RED entered into a Consolidated, Modified and Extended Mortgage for the Loan ("Modification Agreement").  Id. ¶ 4.  Section 28 of the Modification Agreement provides that "if the Mortgagee is made or becomes a party to any suit or action, by reason of this Mortgage or the indebtedness hereby secured, the Mortgagor will pay all expenses incurred by the Mortgagee therein, including a reasonable attorney's fee."  Id. ¶ 5 & Greene Decl. (ECF No. 43) Ex. C.

RED was named as a defendant in two lawsuits related to the Loan after the execution of the Modification Agreement, both of which were filed in New York State Supreme Court, Westchester County:  Beebe Construction Services, Inc. v. Renamba LLC, Red Mortgage Capital, LLC, et al., Index No. 53719/2015 ("Beebe 2015"), and Beebe Construction Services, Inc. v. Renamba LLC, Red Mortgage Capital, LLC, et al., Index No. 61493/2016 ("Beebe 2016") (collectively, the "Beebe Actions").  Def.'s 56.1 Statement ¶¶ 6-8.

In late 2017, Renamba expressed a desire to pay off the Loan.  Pl.'s 56.1 Statement ¶ 37.  On December 15, 2017, RED sent a document to Renamba that provided "an estimate of funds required in order to payoff this loan on or before December 31, 2017."  Greene Decl. Ex. H at P000061.  The document included a line item for "Legal Fees" in the amount of $1,130,100.96.  Id.  After receiving the December 15, 2017 payoff statement, Renamba sent an email to RED asking for a breakdown of the Legal Fees.  Def.'s 56.1 Statement ¶ 40; see Greene Decl. Ex. I at P000071.  RED responded that Renamba was "not entitled to see this info.  The scope and nature of the legal work is protected by attorney-client privilege."  Greene Decl. Ex. I at P000071.

On December 18, 2017, RED sent a further email to Renamba which stated:

>	The litigation fees were incurred under the loan documents which you signed. Those documents do not entitle you to audit or otherwise approve of RED's legal fees.
>
>	The fees in question cover representation for almost three years in two separate lawsuits with full discovery and substantial pleadings and motions. Ultimately, it was RED's success on its motion for summary judgment that facilitated the settlement and resolution of this matter. And, quite frankly, your lack of involvement throughout this litigation and the fact that you failed to mount a credible defense until late in the course of this litigation only served to compound the legal expenses incurred by RED.
>
>	The descriptions of the legal invoices from counsel are privileged and confidential. RED will not waive the protections of privilege as an incentive for you to honor your contractual obligation. However, RED will provide all of the cover sheets to the invoices which will show that its outside counsel billed RED for the aggregate amount of the legal fees owed, which amount, the cover sheets will show, relates solely to the Ambassador litigation.
>
>	As soon as I have the invoice cover sheets I'll send them over.

Greene Decl. Ex. J at P000067.

On January 12, 2018, RED sent Renamba a document that provided "an estimate of funds required in order to payoff this loan on or before January 31, 2018," which again included a line item for "Legal Fees" in the amount of $1,130,100.96. Greene Decl. Ex. L at P000099. In response, on January 22, 2018, Renamba emailed RED, stating, among other things, that "the payoff statement still has [a] huge objectionable legal fee for which we have never received any breakdown except copy [sic] of their statements sent to Red Capital." Greene Decl. Ex. M at P000097. The email further stated, "[p]lease advise if Red will reduce the fee to a 'reasonable' amount or we will be forced to close & pay this exorbitant & unjustified amount." Id. RED responded by email the next day, stating that it would "not negotiate the payment of all amounts due and owing." Greene Decl. Ex. M at P000096. RED sent Renamba a third payoff document on January 25, 2018, this time providing "an estimate of funds required in order to payoff this

3

loan on or before January 31, 2018"; this statement also included a line item of "Legal Fees" in the amount of $1,130,100.96.  Greene Decl. Ex. N at P000059.

Renamba paid off the Loan, including the legal fees, on January 31, 2018.  Greene Decl. Ex. O at RED024092.  On January 14, 2019, counsel for Renamba sent a letter to RED, noting Renamba's "clear and unambiguous objection to the payment of the [$1,130,100.96 in] legal fees together with the express reservation of its rights to dispute the fees after closing."  Greene Decl. Ex. Q.  Counsel added that "[i]t is also clear that our client paid these fees under protest while reasonably relying on the representations made by Red Capital Group that the descriptions on the legal invoices were reasonable, properly limited to the litigated issues as they pertained only to Red Capital, and protected by attorney-client privilege."  Id.  Counsel asked RED to produce "the itemized and detailed descriptions necessarily associated with the legal fee at issue."  Id.

Following the exchange of correspondence between counsel for Renamba and counsel for RED during the ensuing months, in which Renamba's counsel again sought to obtain RED's attorneys' fee bills and RED again provided documents that it had already provided to Renamba regarding those bills, Greene Decl. Exs. R-T, Renamba commenced this action in New York State Supreme Court, Westchester County on June 19, 2019.  Def.'s 56.1 Statement ¶ 54.  On July 3, 2019, RED removed the case to this Court.  Id. ¶ 56; see ECF No. 1.

In October 2019, RED's counsel informed Renamba that $79,421.25 in legal fees had been improperly billed to Renamba.  Id. ¶ 58.  RED reimbursed Renamba for that amount in November 2019.  Greene Decl. Ex. W.  The parties dispute the reasonableness of the remainder of the legal fees billed to, and paid by, Renamba, in particular the necessity of the amount of work performed by RED's counsel in defending against the Beebe Actions and the propriety of

4

the billing practices employed by RED's counsel and reflected in their billing invoices. See Def.'s 56.1 Statement ¶¶ 16, 29-30, 32, 60-72.

## II. DISCUSSION

### A. Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. v. Siemens Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)). Where each party moves for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citing Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)).

### B. Applicable Legal Framework

As a threshold matter, the parties disagree as to whether the issues in dispute here are properly the subject of a motion for summary judgment or whether the Court should instead be able to resolve this matter by way of a discretionary determination, without regard for whether there are genuine issues of material fact. Compare ECF No. 47 ("Def.'s Mem.") at 6-7 with ECF No. 51 ("Pl.'s Reply Mem.") at 1-3.

There are countless examples of cases where courts have evaluated the proper amount of attorneys' fees to award. The issue arises in various contexts, including, for example, standalone motions for attorneys' fees filed after a judgment is entered. See, e.g., Guo v. Tommy's Sushi, Inc., No. 14-cv-3964 (PAE), 2016 WL 452319 (S.D.N.Y. Feb. 5, 2016) (deciding fee application filed pursuant to 29 U.S.C. § 216(b) and N.Y. Lab. Law §§ 198(1-a), 663(1) following one-day bench trial); Robinson v. City of New York, No. 05-cv-9545 (GEL), 2009 WL 3109846 (S.D.N.Y. Sept. 29, 2009) (deciding fee application filed pursuant to 42 U.S.C. § 1988 following 14-day trial). In these cases, the decision on attorneys' fees is clearly understood as a discretionary decision of the court and not an issue for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Another category of cases is those, such as McGuire v. Russell Miller, Inc., 1 F.3d 1306 (2d Cir. 1993), in which there has been a dispute about whether a party was entitled to attorneys' fees pursuant to a contract. As the Second Circuit held in McGuire, "when a contract provides for an award of attorneys' fees, the jury is to decide at trial whether a party may recover such fees; if the jury decides that a party may recover attorneys' fees, then the judge is to determine a reasonable amount of fees." Id. at 1313. In that case, the Second Circuit explained that the defendants' counterclaim for attorneys' fees was "a claim for a contractual 'legal right,' and

plaintiff had the right to have a jury decide whether defendants should recover attorneys' fees under the agreement," but "the subsequent action . . . to determine a reasonable amount of attorneys' fees owed was not an action to enforce 'legal rights' pursuant to a contract; rather, such an action was equitable in nature."  Id. at 1315.  Therefore, "although plaintiff had the right to a jury decision on whether defendants should recover attorneys' fees, plaintiff did not have the right to a jury decision on a reasonable amount of attorneys' fees."  Id.

Although this case involves the issue of a party's entitlement to attorneys' fees pursuant to a contract, the exact rationale of McGuire with respect to the Court's role in the determination of attorneys' fees does not apply, because the legal question in this case is not whether RED was entitled to reasonable attorneys' fees under the terms of the parties' contract.  The parties agree that pursuant to the Modification Agreement, RED was entitled to "reasonable" attorneys' fees.  Instead, the legal question, as framed by Renamba, is whether RED *breached the contract* by charging Renamba the amount of fees that it charged.  Analogizing to McGuire, there is a threshold question to be decided by the factfinder in this case—whether RED breached the Modification Agreement by passing on to Renamba an unreasonable amount in legal fees for the work performed by RED's counsel in the Beebe Actions.  As set forth in greater detail below, the assessment of whether the legal fees included in the payoff amount were so unreasonable as to amount to a breach of the contract requires an evaluation of the necessity of the work that was performed and whether the legal efforts of RED's various counsel were excessive or appropriate.  This inquiry extends well beyond a review of individual time entries or billing practices, and will require the factfinder to weigh conflicting evidence and make credibility determinations.

The Court will leave for another day—with further input from the parties—the question of whether, after the threshold breach of contract question is decided, the determination of the

dollar amount that constitutes a "reasonable" fee within the meaning of the Modification Agreement is to be made by a factfinder or by the Court as a discretionary matter. Judge Jacobs's concurring opinion in McGuire noted that the Second Circuit was not deciding in that case whether a party would have the right to a jury trial to determine the amount of attorneys' fees "where a claimant seeks contractual indemnification for fees incurred in a separate litigation against a third party." Id. at 1317. That is very close to the scenario presented here, where RED sought contractual indemnification from Renamba for attorneys' fees incurred in the separate actions involving third party Beebe Construction Services, Inc., and Renamba now challenges the fees that it already has paid. It is not necessary to resolve this question, however, in order to address the pending motions.

In sum, the Court concludes that Renamba's breach of contract claim—even though it is inextricably intertwined with the question of the reasonableness of RED's attorneys' fees—cannot be resolved as a purely discretionary matter, as RED suggests. The Court also concludes that the threshold question regarding the alleged breach of the Modification Agreement based on the purported unreasonableness of RED's legal fees cannot be resolved on the present cross-motions for summary judgment, as Renamba suggests,[3] because there are genuine issues of material fact in dispute.[4]

---

[3] See Pl.'s Reply Mem. at 3-6.

[4] Renamba references two cases where courts have ruled on the issue of the reasonableness of attorneys' fees at the summary judgment stage. See Pl.'s Reply Mem. at 2 (citing Kerr v. John Thomas Fin., No. 14-cv-9168 (KBF) (HBP), 2017 WL 435826 (S.D.N.Y. Jan. 31, 2017) adopted as modified, 2017 WL 1609224 (S.D.N.Y. May 1, 2017), and Hervochon v. Iona Coll., No. 14-cv-6017 (CS) (PED), 2019 WL 2451431 (S.D.N.Y. Feb. 15, 2019), adopted by 2019 WL 1375359 (S.D.N.Y. Mar. 27, 2019)). Neither of these cases involved a claim for breach of contract based on an allegation that a party charged unreasonable attorneys' fees. Moreover, in Kerr, while the court did state that the "question of how much to award as

### C. Analysis

#### 1. Breach of Contract

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Schupak Grp., Inc. v. Travelers Cas. & Sur. Co. of America, 425 F. App'x 23, 25 (2d Cir. 2011). Renamba claims RED breached Section 28 of the Modification Agreement by charging Renamba an unreasonable amount of legal fees, and that it therefore has suffered damages "in an amount representing the difference paid between the unreasonable attorney's fees charged by RED and the amount of a reasonable attorneys' fees [sic]." ECF No. 42 ("Pl.'s Mem.") at 7. According to RED, " because the parties do not dispute that there is a contract pursuant to which Renamba was required to pay RED 'a reasonable attorney's fee,' the only open issue for the Court is whether RED's attorneys' fees were 'reasonable.'" ECF No. 47 ("Def.'s Mem.") at 7.

As one court in this District recently stated,

> [T]he question of the reasonableness of fees in a contract case is one of fact, no different than any other questions of fact addressed by a court on summary judgment. In this District, the moving party must support it with a proper 56.1 statement and the opponent can dispute it with a proper counterstatement, supported by fact. The proponent's mere assertion that fees are reasonable does not relieve the court of the obligation to review the underlying record to assure that the assertion is supported by the record. But, assuming the assertion is supported, the opposing party cannot defeat summary judgment by incanting the words "genuine issue of fact." It must identify facts that create a genuine issue.

---

attorneys' fees is left to the discretion of the district court," 2017 WL 435826, at *6, it relied on case law in which the issue of attorneys' fees was decided post-trial, a distinctly different procedural posture than what is presented here.

UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC, No. 20-cv-2043 (LJL), 2021 WL 3292519, at *6 (S.D.N.Y. Aug. 2, 2021).[5]

Renamba's challenges to the legal fees charged by RED are (1) that the number of hours billed by Morris, Manning & Martin, LLP ("MMM"), RED's principal counsel in the Beebe Actions, was excessive because Renamba's counsel was lead counsel for the defendants in those actions, performed most of the work in defending those actions, and billed significantly less time than MMM; and (2) that MMM's billing records are replete with block-billing and vague time entries, and the legal fees amount should be reduced as a result. Pl.'s Mem. at 13-19. Subsumed within the first argument—that the hours billed by MMM were excessive—is a claim of duplicative billing, i.e., that there were instances in which more than one attorney billed for the same task. Id. at 15-16. Meanwhile, RED asserts that the legal fees it incurred in the Beebe Actions were reasonable, arguing that (1) the hours expended by MMM were necessary and appropriate; (2) MMM's billing entries do not warrant a reduction in fees, but if they do, then the reduction should not be as large as the reduction sought by Renamba; and (3) the hours spent by MMM on the Beebe Actions should not be compared to the hours spent by Renamba's counsel on those Actions. Def.'s Mem. at 8-23.

In support of their cross-motions, both parties have submitted Local Rule 56.1 statements. ECF Nos. 46, 50. In addition, both Renamba and RED have submitted declarations from their respective counsel in the Beebe Actions, as well as others involved in the litigation of

---

[5] Notably, in UMB Bank, "the parties had consented that, if they were unable to resolve the case on their own, the Court would resolve the amount of damages on papers submitted by the parties, without the need for testimony or trial." 2021 WL 3292519, at *3. The clear implication is that had the parties not expressly consented to the Court resolving the matter in this fashion, some sort of hearing or trial may have been required to address the damages issues, which included attorneys' fees.

those matters.  ECF No. 44 ("Pavlus Decl."), ECF No. 45 ("Sheats Decl."), ECF No. 48 ("Murnane Decl."), ECF No. 49 ("Rothell Decl.").  Among the documents submitted by Renamba in support of its motion are the partially redacted time records that it received from RED for MMM's work on the Beebe Actions.  Greene Decl. Exs. U-1 & U-2.

The crux of the parties' dispute is the reasonableness of the amount of time spent by MMM in litigating the Beebe Actions.  Renamba relies in significant part on a declaration from Jordan R. Pavlus, a partner at Byrne, Costello & Pickard, P.C. ("BCP"), the law firm that represented Renamba in the Beebe Actions.  ECF No. 44.  In his declaration, Pavlus explains that in each of the Beebe Actions, "Renamba was named in five of the seven causes of action"; that "[t]he two causes of action against RED [in each of the Beebe Actions] were for ancillary claims relating to alleged diversion of trust fund assets and lien law violations"; that "[o]ver the course of both cases, Renamba was billed for 773.5 hours for a total of $158,661.08 for all of [BCP's] services in connection with the representation"; that "[t]he causes of action against RED . . . were limited in scope to discrete legal and factual issues"; that "[t]he claims that were brought against RED were not meritorious and required only limited discovery"; that "[c]ounsel for Renamba took the vast majority of deposition testimony"; that "[a]s of July 30, 2015, all of the facts were known regarding Beebe's causes of action against RED [and] [t]here were no facts in dispute"; that "the bulk of MMM's time was devoted to discovery related issues regarding the dispute between Renamba and Beebe"; and that "[i]t is unequivocal that [BCP] served in the role of lead counsel and handled the vast majority of the work in the Beebe Litigations while RED played an ancillary role."  Pavlus Decl. ¶¶ 7, 9, 10, 14-17, 19, 21.

Renamba also submitted a declaration from Edward J. Sheats, counsel for plaintiff Beebe Construction Services, Inc. in the Beebe Actions.  ECF No. 45.  Sheats states that "BCP was

11

primarily responsible for all discovery, depositions, correspondence, conferences and motion practice with respect to both litigated matters." Sheats Decl. ¶ 16. He adds that based on his observations, "MMM played a very limited role in both Beebe matters," and "BCP took the lead role in depositions and in dispositive motion practice." Id. ¶ 17. Moreover, according to Sheats, "MMM did not appear to be involved in or knowledgeable about the complexities of the case or the construction project. BCP had clearly mastered both." Id. Sheats asserts that "[b]ased on my recollection, personal knowledge, and first-hand experience working on both of the above matters, it is unreasonable to suggest that MMM justifiably expended more hours on the Beebe Litigations than BCP. I was shocked to see the hours and fees claimed by MMM." Id. ¶ 20.

The declarations submitted by RED in opposition to Renamba's motion and in support of RED's own cross-motion paint an entirely different picture of the work performed by MMM as part of the Beebe Actions and the necessity of that work in the successful resolution of those cases on behalf of the defendants. RED provided a declaration from Bonnie Y. Hochman Rothell, a partner at MMM. ECF No. 49. In her declaration, Rothell explains that

> [t]he Beebe Litigation was based on allegations that Renamba failed to pay Beebe for construction work performed on the Project. Specifically, Beebe claimed that Renamba upgraded various aspects of the work from what was originally agreed to in the Construction Contract and then refused to pay for such upgraded work. Throughout construction Renamba failed to keep RED apprised of changes in construction which made the litigation even more problematic.

Rothell Decl. ¶ 9. Rothell further notes that

> [w]hile it may sometimes be the case that a construction lender's role in litigation such as the Beebe Litigation is more limited, Beebe's purported claims against RED exposed RED to millions of dollars in potential liability due to Renamba's refusal to pay Beebe amounts related to construction improvements directed by Renamba. This exposure was in addition to any lien priority claim by Beebe in its lien foreclosure cause of action.

> . . . Due to the presence of mechanics' liens on the Project, among other things, Renamba was also in default under the loan documents. Because of numerous defaults under the loan documents, RED had obligations vis-a-vis [the United States Department of Housing and Urban Development ("HUD")] in connection with the HUD insurance on the loan.

Id. ¶¶ 12-13. She states that "[o]n numerous occasions, Beebe specifically claimed that RED's liability to Beebe was separate and apart from the Plaintiff's liability and that any resolution between Beebe and Plaintiff would not resolve Beebe's claims against RED." Id. ¶ 18. Rothell describes all of the work that MMM, on behalf of RED, was required to perform in connection with the Beebe Actions. See, e.g., id. ¶¶ 23-26, 31-37, 40-47, 51-57. With respect to document production, for example, Rothell notes that "Beebe admitted to engaging in a 'document dump' on the parties by producing its entire file prior to any search for responsiveness," and that "[t]hese actions by Beebe increased time spent by RED's counsel to review documents and prepare for depositions." Id. ¶ 36. She further notes that "[o]verall, there were nearly 200,000 unique documents and 400,000 documents total produced by the parties relating to the Beebe Litigation." Id. ¶ 37. In addition, Rothell cites as "[a]n example of Renamba's attorney's lack of assistance in shouldering any of the joint defense work" the "failure to provide a description or summary of [Renamba's] own document production, which required RED to include such documents in its document review." Id. ¶ 38. Rothell explains that following discovery, RED was successful on its motion for partial summary judgment on the issue of lien priority, id. ¶ 47, and that soon thereafter, the parties reached a settlement in principle. Id. ¶ 51. Nonetheless, because the parties were required by the court to proceed with the Beebe 2016 case in the event that the settlement fell through, RED had to prepare and file a motion for partial summary judgment in Beebe 2016 just two weeks before the stipulation of discontinuance in the Beebe Actions was filed. Id. ¶¶ 52-57.

13

RED also submitted a declaration from Timothy M. Murnane, a former vice president and senior construction loan administrator for RED, who was responsible for servicing the mortgage issued to Renamba.  ECF No. 48.  Murnane explains in his declaration that

> [b]ecause the Mortgage was a HUD-insured loan, HUD was interested in the dispute between Renamba and Beebe, its general contractor.  As the mortgagor, RED was obligated to defend HUD's interests, protect the Mortgage, and prevent assignment of the Mortgage to HUD and a claim on the insurance fund.  This required innumerable conference calls and correspondence between HUD and MMM regarding the status of the loan.

Murnane Decl. ¶ 14.  He further notes that "[i]n addition to the time spent by MMM defending the litigations, I estimate that approximately 30% of my daily workload was devoted to this dispute at the height of the litigation." Id. ¶ 16.  Murnane elaborates as follows:

> In particular, I was involved with responding to discovery requests made by Beebe to RED.  I was the internal point person for RED coordinating the collection and production of internal documents responsive to those requests.  To the best of my recollection, there were hundreds of thousands of pages of documents collected by IT personnel for review by MMM in response to Beebe's requests.
>
> Further, I am aware that there was extensive motion practice in connection with the litigations, as I was asked to submit affidavits in support of RED's position on no fewer than four separate occasions over the course of the litigations.
>
> I was also deposed in the litigations.  I found MMM's preparation for my deposition and representation at my deposition to be complete and necessary.

Id. ¶¶ 17-19.

RED argues that the Court should disregard the Sheats Declaration on the ground that it is not based on personal knowledge.  See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").  Indeed, some statements are based on Sheats' "clear perception" or are

made "[u]pon information and belief." Sheats Decl. ¶¶ 15, 17.  Nonetheless, Sheats also states, based on his observations and experience litigating the Beebe Actions, that "BCP was primarily responsible for all discovery, depositions, correspondence, conferences and motion practice with respect to both litigated matters," and that "[b]ased on my recollection, personal knowledge, and first-hand experience working on both of the above matters, it is unreasonable to suggest that MMM justifiably expended more hours on the Beebe Litigations than BCP." Id. ¶¶ 16, 20; see Smeraldo v. City of Jamestown, 512 F. App'x 32, 34 (2d Cir. 2013) (noting that "it is generally true that an affidavit or declaration used to support or oppose a motion must be made on personal knowledge," and that "a court may, in considering a motion for summary judgment, simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible.") (quoting Fed. R. Civ. P. 56(c)(4)) (quotation marks and brackets omitted).  On balance, while there are certain aspects of the Sheats Declaration that cannot be credited for purposes of Renamba's motion, the remaining objections raised by RED ultimately would go to the weight that should be given to Sheats's statements at any future evidentiary hearing or trial in this matter, and undoubtedly will serve as the basis for various lines of future cross-examination.

Even if the Court were to disregard the Sheats Declaration in its entirety, the stark contrasts between the Pavlus Declaration on the one hand and the Rothell and Murnane Declarations on the other present clear, material, and genuine issues of fact as to the reasonableness of the time spent, work performed, and bills generated by MMM in connection with the Beebe Actions.  To make a determination as to whether the fees charged by RED to Renamba for work performed by MMM in those cases can properly be described as "reasonable" attorneys' fees within the meaning of the Modification Agreement requires an evaluation of the

credibility of these critical witnesses, precisely the type of assessment that cannot be performed in order to decide a motion for summary judgment. See, e.g., Reynolds v. Quiros, 990 F.3d 286, 294 (2d Cir. 2021) ("In evaluating a motion for summary judgment, a district court may not make credibility determinations, or weigh evidence."); Vital v. Interfaith Med. Ctr., 168 F.3d 615, 622 (2d Cir. 1999) ("'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'") (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)). In light of these issues of fact, the parties' cross-motions for summary judgment on the claim for breach of contract are DENIED.[6]

### 2. Unjust Enrichment and Breach of the Implied Covenant of Good Faith and Fair Dealing

Renamba's claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing both fall squarely within the scope of the Modification Agreement, the validity of which is undisputed, and Renamba has not shown that these claims are anything other than duplicative of its breach of contract claim.

With respect to the unjust enrichment claim, "it is black-letter law in New York that recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract." Coty, Inc. v. L'Oreal S.A., 320 F. App'x 5, 7 (2d Cir. 2009) (summary order) (citing Clark–Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388-89 (1987) ("It is impermissible . . . to seek damages in an action sounding in quasi contract

---

[6] Because the Court finds that there are genuine issues of material fact regarding the reasonableness of the hours billed by MMM based on the necessity of the work performed, it need not address Renamba's arguments that the legal fees are unreasonable based on MMM's billing practices, i.e., block-billing and vagueness. Contrary to Renamba's contention, for the reasons set forth in this section, an assessment of the reasonableness or unreasonableness of the legal fees cannot be made based on the time records alone. Ultimately, those issues can be left to a subsequent determination as to what the appropriate amount of attorneys' fees may be in this case, after resolution of the threshold question of whether there has been a breach of contract.

where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties.")).

Similarly, Renamba's breach of contract claim obviates the need for any claim purportedly based on a breach of the implied covenant of good faith and fair dealing. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013) (quotation marks omitted). "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Id. (alteration and quotation marks omitted); see also Nuance Commc'ns, Inc. v. Int'l Bus. Machs. Corp., No. 16-cv-5173 (KMK), 2019 WL 2006180, at *15 (S.D.N.Y. May 7, 2019) (where breach of contract claim and breach of the implied covenant of good faith and fair dealing claim were "premised on the same facts" and "both claims seek the same remedy," the court found that "the implied-covenant claim is duplicative" and granted summary judgment on it).

Renamba does not allege any conduct other than RED's breach of its express agreement to charge "a reasonable attorney's fee" as set forth in Section 28 of the Modification Agreement. Although Renamba argues that it would be premature for the Court to grant summary judgment on these claims, the record in this case is fully developed, and Renamba provides no basis apart from the alleged breach of contract for its claims that RED received money to which it was not entitled or acted in bad faith. Renamba vaguely suggests that "the claim for breach of the covenant for good faith and fair dealing may rely on additional facts," but the time to have raised those additional facts was in this motion, and Renamba has not done so. Renamba's claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing are just

17

attempted variations of the principal breach of contract cause of action—they rely on the same facts, fundamentally seek the same remedy, and are adequately addressed by the breach of contract claim itself.

Accordingly, Renamba's motion for summary judgment on its claim for unjust enrichment is DENIED, and RED's cross-motion for summary judgment on Renamba's claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing is GRANTED.

## CONCLUSION

For the foregoing reasons, Renamba's motion for summary judgment (ECF No. 41) is DENIED, and RED's cross-motion for summary judgment (ECF No. 47) is GRANTED IN PART AND DENIED IN PART.

The Court will issue a separate scheduling order for an in-person conference to discuss the next steps in this matter.

Dated: September 28, 2021
      White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge